Case 4:15-cv-00635-JM Document 7 Filed 12/10/15 Page 1 of 15

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 10 2015

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN (LITTLE ROCK) DIVISION

LIBERTARIAN PARTY OF ARKANSAS,            PLAINTIFFS
KRISTIN VAUGHN, ROBERT CHRIS HAYES,
DEBRAH STANDIFORD, and MICHAEL PAKKO

VS.            NO. 4:15-CV-635-JM

HONORABLE MARK MARTIN
In his official capacity as
Arkansas Secretary of State            DEFENDANT

## DEFENDANT, HONORABLE MARK MARTIN'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND ALTERNATIVE MOTION FOR JUDGMENT ON THE PLEADINGS

The Court should dismiss. This "as-applied" challenge to an Arkansas statutory arrangement concerning ballot access for state candidates under Article I §4, cl. 1, of the United States Constitution, where there are no federal races at issue on the face of the Complaint. The State of Arkansas has a vested interest in protecting its comprehensive ballot-access scheme, accordingly. The Court lacks subject matter jurisdiction. Plaintiffs fail to state a claim upon which relief can be granted. In the alternative, Defendant is entitled to judgment on the pleadings.

1. *The Plaintiffs lack the requisite requirements from which the Court can exercise Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).*

Plaintiffs have brought suit against Defendant Secretary for both declaratory and injunctive relief under 28 U.S.C. §1343, § 2201, §2202, and 42 U.S.C. § 1983. Plaintiffs erroneously claim Arkansas Code Annotated § 7-7-101, § 7-7-7-203(c)(1), § 7-7-205(c)(2), and

1

§ 7-7-205(c)(3) have been applied unconstitutionally to Plaintiffs. Plaintiffs' through their Complaint, erroneously argue the Arkansas Election Rules regarding the certification of minor parties, the nomination of minority party candidates, and statutory deadlines for the preferential party primary and general election, set unconstitutionally early and vague deadlines for the Libertarian Party to file their candidate nominees' Political Practices Pledge (PPP) and to hold a nominating convention prior to the closing of the filing period as set in Ark. Code Ann. § 7-7-203.

Before continuing to Defendant Secretary's Motions, we must address the distinction between as-applied and facial challenges. Plaintiffs, through their Complaint, have submitted an as-applied challenge to Arkansas Code Annotated § 7-7-101, § 7-7-7-203(c)(1), § 7-7-205(c)(2), and § 7-7-205(c)(3), in some way insinuating Defendant Secretary had the discretion to change the dates set by statute. While Plaintiffs claim their challenge is an as-applied challenge to these statutes, they fail to show any particularized harm to the named Plaintiffs in this suit. In fact, their statements regarding the harm done to Plaintiffs are largely blanket statements of inconvenience, nothing more. Plaintiffs argue their constitutional rights under the First and Fourteen Amendments have been abridged by Defendant Secretary's conduct, but give no specific showings of fact demonstrating their suit to truly be an as-applied challenge.

While the distinction between facial and as-applied challenges is not always clear, "the distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Plaintiffs have not pleaded sufficient facts to make a true as-applied challenge. While the Eighth Circuit is apparently so-far silent on the subject, two sister circuits have recognized (9th and 5th Circuits), "even when a group of plaintiffs has general standing to

challenge the constitutionality of a statute, the plaintiffs might not have developed a sufficiently concrete record to sustain their as-applied challenge." *Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014) (*Also See*; *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010) (finding that the plaintiffs had standing but rejecting their as-applied challenge because the complaint was "devoid of information from which the court could conclude that the law in question was unconstitutional as applied to" them). While their holdings are not binding law in this Circuit, they are helpful in demonstrating why Plaintiffs cannot successfully raise an as-applied challenge in this instance. Plaintiffs do not have a sufficient factual basis on the face of their Complaint to succeed.

The test that applies to this analysis is one which considers the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate, and then identif[ies] and evaluate[s] the precise interests put forward by the State as justifications for the burden imposed by its rule. *See, Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (decision under different section of U.S. Constitution). "Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson*, 460 U.S. at 789 (1983). Plaintiffs recite nebulous harms in their Complaint, but do not substantiate their claims through concrete instances in which they have actually been harmed. Rather, Plaintiffs rest on the timing of these events as somehow being harmful on their face. To oppose Plaintiffs' blanket statements we address the following.

States are allowed to place restrictions on a candidate's eligibility without abridging constitutionally afforded freedoms. Courts have recognized, that "as a practical matter, there must be some substantial regulation of elections if they are to be fair and honest and if some sort

of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (*Citing*; *Storer v. Brown*, 415 U.S. 724, 730 (1974)). These regulations go to every aspect of the electoral process, and generally, the State's important regulatory interests are sufficient to justify reasonable, nondiscriminatory restrictions. Anderson, 460 U.S. at 788. Other than stating these Arkansas statutes are unreasonable, Plaintiffs have failed to give actual, concrete, factual examples showing that the statutes are unreasonable as applied to any of them.

Plaintiffs, through their Complaint, ask the Court to apply strict scrutiny against the aforementioned Arkansas statutes. However, they do not state why strict scrutiny is appropriate, other than the fact their rights under the First and Fourteen amendments have been abridged in some nebulous manner. The Supreme Court has recognized that only when "rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (*Citing*; *Norman v. Reed*, 502 U.S. 279, 289 (1992). However, when a State's election law imposes reasonable nondiscriminatory restrictions, "the State's important regulatory interests are generally sufficient to justify the restrictions." Burdick, 504 U.S. at 434 (Citing; Anderson, 460 U.S. at 788). Plaintiffs have failed to show that Arkansas Code Annotated § 7-7-101, § 7-7-7-203(c)(1), § 7-7-205(c)(2), and § 7-7-205(c)(3) impose severe restrictions. As such, strict scrutiny is improper.

The Supreme Court has already determined nomination by convention to be an appropriate procedure for political parties to submit their candidates. "Neither can we take seriously the suggestion made here that the State has invidiously discriminated against the smaller parties by insisting that their nominations be by convention, rather than by primary election." Am. Party of Tex. v. White, 415 U.S. 767, 781 (1974) (where the Supreme Court

4

found nothing demonstrating that the convention process was invidiously more burdensome than the primary election, where a runoff might take place, major parties must also hold its precinct, county, and state conventions to adopt and promulgate party platforms and to conduct other business).

Moreover, having the nomination convention linked to the date of the party primary is not a burden worthy of strict scrutiny. The Supreme Court has already held that an "electoral system, with a convention nominating process linked to the date of the primary election, "in no way fr[oze] the status quo, but implicitly recognize[d] the potential fluidity of American political life" and "afford[ed] minority political parties a real and essentially equal opportunity for ballot qualification." Ultimately ruling that "neither the First and Fourteenth Amendments nor the Equal Protection Clause of the Fourteenth Amendment requires any more." *Am. Party of Tex. v. White*, 415 U.S. 767, 788 (1974). While the dates differed under American Party of Texas, the fact that the date of the nominating convention is fluid and tied to the primary election is not a proper subject to a cause of action.

The Eighth Circuit has already addressed similar issues in the past. The Missouri Libertarian Party challenged the fact that new parties had to submit their electors **before** established parties. The Eighth Circuit affirmed the District Court's ruling that the ballot access statute requiring the Libertarian Party to submit their electors prior to when established parties had to submit theirs, did not pose an equal protection issue. *Manifold v. Blunt*, 863 F.2d 1368, 1372 (8th Cir. 1988) The Court went on to say "the time frame of the Missouri statutes [was] reasonable. The filing requirements [were] not burdensome or even impractical; they certainly [were] not an "insurmountable obstacle" for a party seeking a spot on the ballot." *Manifold*, 863

F.2d at 1374-1375. Plaintiffs cannot show these statutes to be any worse than an inconvenience, if at all.

Chris Hayes timely filed for a U.S. Congress seat, demonstrating that there is no harm to him; and that the Libertarian Party successfully conducted its nominating convention sometime before November 9, 2015 (at noon).  Even if Plaintiffs chose to use their named Plaintiffs and the fact that most of them did not file, the Court further held that, "the overwhelming conclusion in this case is that the Libertarian Party's failure to file its declarations of candidacy is not sufficient to support a claim that the requirement unconstitutionally burdens new parties, nor to suggest that the requirement does not fulfill a compelling state interest." *Manifold*, 863 F.2d at 1375. We now address the separate motions.

> a. *Plaintiffs have not shown an injury in fact that is fairly traceable to the conduct of Defendant Secretary that could be redressed by a favorable decision.*

Plaintiffs raise 28 U.S.C. §1343, § 2201, §2202, and 42 U.S.C. § 1983, as their bases for Subject Matter Jurisdiction. However, before a party can invoke the jurisdiction of an Article III Court, it must present a justiciable question. While Plaintiffs claim the issue is with the implementation of the Arkansas Code as to the status of their Party and the nomination procedure of their candidates, the real issue before the Court is the passage of Act 4 of the First Extraordinary Session of 2015.

Act 4 was part of a group of twelve acts enacted in the Special Session of the General Assembly in May of 2015. Many of these acts were enacted with the purpose of moving the date of the 2016 primary elections so that the Arkansas Presidential primary election will take place at the same time as the primary elections in Alabama, Georgia, North Carolina, Tennessee, Texas, and Virginia, in an effort now called the "SEC Primary." There was no nefarious plan to exclude

any party from the process, but an effort to increase the impact of Arkansas voters in the Presidential primary process. Exhibit 1.

While the "SEC Primary" has moved the dates, possibly creating a minor inconvenience to parties, the whole of Act 4, maximizes the votes of Arkansans in the Presidential election. States with smaller populations were seen as an afterthought when compared to the opportunity of winning delegates in much more populated states. On March 1, 2016, 1010 delegates from these states are at issue, and that early primary date makes the votes of Arkansans much more valuable in each Presidential Primary.

Plaintiffs cite to sections of the United States Code as the basis for Jurisdiction, but citations alone do not demonstrate the requisite standing to bring this suit. To satisfy Article III standing, "a plaintiff must establish that he or she has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that there is "a causal connection between the injury and the conduct complained of"; and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Constitution Party v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011) (*Citing: Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (*see also*: *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 1001 (8th Cir. 2015). Moreover, Plaintiffs must establish standing for each type of remedy sought, including declaratory and injunctive relief. *Friends of Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Plaintiffs argue the movement of the deadline has made petitioning more difficult, yet none of the named Plaintiffs have to petition to be on the ballot if they choose to run as Libertarians in the 2016 general election. The Libertarian Party filed its qualifying petitions in June of 2015, Exhibit 1, and was certified as a new political party in July of 2015, Exhibit 1.

Plaintiffs argue that they disadvantaged by the moving of the nominating deadline to a time when interest in the political process by the voting public is less, yet the very purpose of Act 4 is to maximize the effect Arkansas voters may have on the national political stage. There is no factual support for Plaintiffs' contentions. Plaintiffs erroneously argue that moving the nominating period more than a year before the general election puts them at a disadvantage. The Complaint lacks sufficient factual specificity.

Plaintiffs sue Defendant Secretary over the application of deadlines set by Act 4 (which made the changes to § 7-7-203(c) from which Plaintiffs raise this suit), an Act by the General Assembly, to which the Secretary of State must abide by and has no discretion to do otherwise. For Plaintiffs to have standing, there must be some "fairly traceable" action to Defendant Secretary; there is none here.

Lastly, as of today, only one of the named Plaintiffs has filed any paperwork to run as a Libertarian candidate for political office. Chris Hayes submitted the required documentation to run as a Libertarian Candidate for U.S. Congress District 02. No other named plaintiff submitted their admittedly unchallenged candidate paperwork (such as a Political Practices Pledge, a Party Certificate, an Information Statement). In *Constitution Party of South Dakota v. Nelson*, a candidate who wanted to be listed as Governor on the South Dakota ballot lacked standing as she "did not submit a petition with any signatures for certification." *Constitution Party v. Nelson*, 639 F.3d 417 (8th Cir. 2011). A plaintiff required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit, including ballot access, and fails to do so lacks standing. *Pucket v. Hot Springs Sch. Dist.*, 526 F.3d 1151, 1161 (8th Cir. 2008). The Complaint names Plaintiffs who did not know if they wanted to run or even what position to run for, and ultimately did not do the necessary paperwork to register. The Complaint is facially

defective. Seventeen (17) Libertarian candidates registered to run for office; by their successful filings, they essentially concede that the Arkansas law is not being applied unconstitutionally. Plaintiffs fail to support their contrary contentions with facts.

> b. *Plaintiffs' real issue is with Act 4 of 2015 of the First Special Session, an act that is only in place for this primary election cycle.*

Section 7(b) of Act 4, which is not to be codified reads as follows: "the provisions of this act are temporary and expire on December 31, 2016." As such, Act 4 is only intended to suspend the current deadlines for this cycle, meaning the deadlines will return to those that were in place before the Act. Plaintiffs must maintain the requisite interest from the commencement of the litigation and must continue throughout its existence," otherwise, the issue is moot. *Friends of the Earth, Inc.*, 528 U.S. at 189. An Article III Court's inability "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *De Funis v. Odegaard*, 416 U.S. 312, 316 (1974)(*citing*; *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964)). In short, an actual controversy must exist at stages of appellate or certiorari review, not simply at the date the action is initiated." *De Funis*, 416 U.S. at 319 (*citing*; *Roe v. Wade*, 410 U.S. 113, 125 (1973). Plaintiffs fail to articulate sufficient facts to overcome the inherent temporary inconvenience of 2015 will not continue beyond that date.

This case is not, "capable of repetition, yet evading review." In *De Funis*, the Supreme Court stated that because the Petitioner was to graduate from law school before the Court could render judgment, his case against Respondent was moot and not capable of repetition, yet evading review. In the present case, Act 4 was enacted with the facially-evident intent (in Section 7(b)) that it would only impact the present election cycle and would cease to exist after the 2016 General Election. As a result, Plaintiffs' 2015-16 claim are not capable of repetition.

9

> c. While Plaintiffs have also challenged the application of Ark. Code Ann. § 7-7-101, § 7-7-7-203(c)(1), § 7-7-205(c)(2), and § 7-7-205(c)(3) after December 31, 2016. However, these issues are not Ripe for review, and even if they were, Plaintiffs lack the standing to bring this suit.

Future elections are not ripe for review. Plaintiffs have used unsupported blanket statements as to the alleged disadvantages they will be subject to, if the application of Act 4 is upheld. In fact, all of the alleged harms are unique to this election cycle. Plaintiffs are unreasonably asking for anticipatory relief when it comes to the election laws that will impact them after this election cycle. A "ripeness inquiry requires examination of both the 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (*Citing*: *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958 (8th Cir. 2001) (*Citing*: *Johnson v. Missouri*, 142 F.3d 1087, 1090 (8th Cir. 1998). Ultimately, "a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Parrish*, 761 F.3d at 876 (*Citing*; *Texas v. United States*, 523 U.S. 296, 300 (1998). As of the filing of this suit, there is no way to know who will run, who will register, if the party will maintain its party status, or if the party will have to submit signatures or qualify as a party. Future applications of the old law – which goes back into effect in 2017 - have yet to mature. Those claims and allegations are too speculative and so are not ripe for review.

2. *Plaintiffs fail to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).*

Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and as a result, it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a

motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face. Conclusory statements" and "naked assertions devoid of further factual enhancement" are insufficient. On a Motion to Dismiss, Courts accept a plaintiff's factual allegations as true but need not accept a plaintiff's legal conclusions. *Retro TV Network, Inc. v. Luken Communs.*, LLC, 696 F.3d 766, 768-769 (8th Cir. 2012) (*Citing*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, Plaintiffs' claims for relief must be more than speculation. They must provide more than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555       (2007) To survive a motion to dismiss, Plaintiffs' Complaint must amplify a claim with enough factual allegations within the context of cause of action, where needed, to render their claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009). Plaintiffs' Complaint does not meet these standards, as such it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

   According to the Complaint, none of the named Plaintiffs know if they plan to run or which specific office they plan to run for. According to the Complaint, one of the named Plaintiffs has "other personal considerations" to consider before she could run, but Plaintiffs do not specify in what way those considerations differ from those of any other candidate, regardless of party affiliation. According to the Complaint, "said statutes" set an "unconstitutional and vague deadline of between November 2 through 9, 2015" which moved the time in which all party affiliated candidates had to file their political practices pledge from March, 2016 to November, 2015. However, Plaintiffs fail to mention how this shift of deadlines is either unconstitutional or vague. According to the Complaint, the "aforesaid complained laws" have "unnecessarily impacted and interfered with the Libertarian Party of Arkansas and potential

Libertarian candidates and citizens wishing to exercise their fundamental rights to political expression and association." Yet, Plaintiffs fail to provide any concrete instances in which the named Plaintiffs have been harmed by Defendant Secretary, or how voters have actually been impacted to their detriment by Act 4.

The only reasoning Plaintiffs provide as to how they are being harmed is that the moving of the deadline, has "made petitioning even more difficult by setting a deadline when political interest among the voting public is less." However, Plaintiffs have failed to substantiate this statement of opinion with any facts that show this new deadline to be as they claim. Libertarians became a new political party by petition in July of 2015. Exhibit 1. Plaintiffs erroneously claim, in an unsupported statement, that they will "not have equal opportunity to have extended time to vet, listen to, conduct their campaigns, and discuss candidates." There is a wholly insufficient factual basis in the Complaint to meet their minimal burden.

Plaintiffs erroneously allege they will be further disadvantaged when compared to other established parties in Arkansas, due to the fact that "minor political parties are usually recognized not to gain strength until the voting public has had an opportunity to size up" majority party candidates. Yet, Plaintiffs provide no factual instances supporting their statement of opinion. Plaintiffs also erroneously claim that many of their potential nominees "have personal and business considerations" and as such, "they cannot necessarily plan so far ahead as to make a decision on their political candidacy." Plaintiffs lack facts.

Plaintiffs fail to show how their unsupported allegations differ from the considerations all candidates have to face in anticipation of running for office. The harm to which Plaintiffs have alluded throughout their Complaint is nothing more than speculation and opinion. Such

12

statements to not meet the requirements set out by Federal Rule of Civil Procedure 8, and as such, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

3. *Plaintiffs fail to sufficiently state a claim that on its face is worthy of a remedy, under Federal Rule of Civil Procedure 12(c), the Complaint should be deemed insufficient as a matter of law.*

Alternatively, if the Court finds a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to be inappropriate, Defendant Secretary moves to have the Court make a judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). A 12(c) motion for judgment on the pleadings is reviewed under the same standard in which a 12(b)(6) motion to dismiss is reviewed. *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015) (*Citing*: *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014). Therefore, the Court must consider whether the Plaintiffs have pleaded "enough facts to state a claim to relief that is plausible on its face." *NanoMech, Inc.*, 777 F.3d at 1023 (*Citing*: *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs have not pleaded sufficient facts to support their claims.

As stated in 2. Above (Plaintiffs have failed to state a claim upon which relief can be granted), the harm to which Plaintiffs have alluded throughout their Complaint is nothing more than speculation and opinion. Such statements to not meet the requirements set out by Federal Rule of Civil Procedure 8. The Court should hold the pleadings insufficient for relief, pursuant to Federal Rule of Civil Procedure 12(c).

Moreover, in addition to the standing issues raised in 1.a above (Plaintiffs failing to show an injury fairly traceable to Defendant Secretary), "a party invoking federal jurisdiction must support each of the standing requirements with the same kind and degree of evidence at the successive stages of litigation as any other matter on which a plaintiff bears the burden of proof." *Constitution Party v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011). Plaintiffs fail to do so here.

13

Even if Plaintiffs were to meet the standing requirements under a Motion to Dismiss, they cannot meet the standing requirements at later stages of litigation and under a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) or a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. As a result, there is no remedy for Plaintiffs as a matter of law.

*Wherefore*, and for the foregoing reasons, Defendant Secretary of State Mark Martin, in his official capacity, prays that this Court grant Defendant the relief he seeks herein; that the Court deny Plaintiffs any of the relief they seek; that the Court dismiss the Plaintiffs' Complaint; that the Court deny Plaintiffs any injunctive relief; in the alternative, that the Court limit any relief to Plaintiffs the specific declaratory relief requested, only upon strict proof presented by Plaintiffs; alternatively, that the Court limit any remedy to the narrowest possible remedy that would ameliorate any particularized harm caused to each Plaintiff, independently, on their "as-applied" challenge; that the Court deny Plaintiffs' their request for any costs, fees, or expenses; and that the Court grant Defendant such additional relief to which he may be entitled under the circumstances.

Dated this 10th day of December 2015.

Respectfully submitted,

HONORABLE MARK MARTIN
ARKANSAS SECRETARY OF STATE
In his Official Capacity, Defendant

By: _____
A.J. Kelly
General Counsel and
Deputy Secretary of State
PO Box 251570
Little Rock, AR 72225-1570
(501) 682-3401
Fax: (501) 682-1213

14

                        *Attorney for Defendant*
                        *Arkansas Secretary of State*

### **CERTIFICATE OF SERVICE**

I do hereby certify that on this 10th day of December, 2015, I have served the foregoing (with 2 exhibits attached) via the electronic filing system in the Federal District Court Clerk's Office (CM/ECF):

James C. Linger
1710 South Boston Avenue
Tulsa, OK 74119-4810
Fax: (918) 583-8283

W. Whitfield Hyman
300 North 6th Street
Fort Smith, AR 72901
Fax: (479) 316-2252

                                                          _____
                                                          A.J. Kelly