FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 13 2016

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN (LITTLE ROCK) DIVISION

**LIBERTARIAN PARTY OF ARKANSAS,**　　　　　　　　　　**PLAINTIFFS**
**KRISTIN VAUGHN, ROBERT CHRIS HAYES,**
**DEBRAH STANDIFORD, and MICHAEL PAKKO**

VS.　　　　　　　　　NO. 4:15-CV-635-JM

**HONORABLE MARK MARTIN**
**in his official capacity as**
**Arkansas Secretary of State**　　　　　　　　　　**DEFENDANT**

### DEFENDANT, HONORABLE MARK MARTIN'S MEMORANDUM REPLY TO RESPONSE TO DEFENDANT'S AMENDED MOTION TO DISMISS AND ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS

**Comes Now**, Defendant, Honorable Mark Martin, ("Defendant Secretary"), in his official capacity as Arkansas Secretary of State, for his Memorandum Reply to Plaintiffs' Response to Defendant's Amended Motion to Dismiss and Alternative Motion for Judgment on the Pleadings, and states:

The Court should grant the Amended Motion to Dismiss. This is an "as-applied" challenge to the constitutionality of certain statutes. The Eighth Circuit has said that voters do not have standing. Plaintiffs fail to articulate sufficient factual grounds to support their First

1

Amendment claims. Libertarian Party has successfully petitioned to become a political party for at least each of the last three campaign cycles (2012, 2014, and 2016). Libertarian Party has successfully placed its candidates on the ballot, including a full slate of candidates for State Constitutional Offices in 2014, and a full slate of candidates for federal office in 2016 (not including President and Vice President), in the State of Arkansas. There is no harm. The State of Arkansas has done nothing more than follow relevant United States Supreme Court precedent by applying party filing periods equally to all political parties, as the State is entitled to do. U.S. Const. Article I §4, cl. 1.

Plaintiffs' Complaint follows a long line of challenges by the Libertarian Party, across the country, to challenge certain state election procedural rules and mechanisms. But there is no unconstitutional harm in the adoption of such rules in the State of Arkansas. The U.S. Supreme Court has already spoken to these issues. First, "sore loser" provisions of the law prohibit candidates losing a party primary from running another race in the same general election; such prohibitions pass constitutional muster. *Storer v. Brown*, 415 U.S. 724, 736 (1974). Second, fusion candidacies, where candidates can run for the same office in more than one party, can be prohibited. Such prohibitions are constitutional as well. *Timmons, Acting Director v. Twin Cities Area New Party*, 520 U.S. 351, 361-70 (1997) *reversing*, *Twin Cities Area New Party v. McKenna*, 73 F.3d 196 (8th Cir. 1996). Third, states can require newly-formed political parties to nominate their candidates by convention. *American Party of Texas v. White, Secretary of State*, 415 U.S. 767, 781-82 (1974). Arkansas' third-party ballot access law is constitutional. *Green Party of Arkansas v. Martin, Secretary of State*, 649 F.3d 675, 680-87 (8th Cir. 2011) (challenge

to definition of *political party* as meeting minimum number of votes cast for Governor or President of the U.S. at last preceding general election).

"In reviewing a [motion to dismiss], [the court] accept[s] factual allegations of the complaint as true, but the allegations must supply sufficient 'facts to state a claim to relief that is plausible on its face.'" *Libertarian Party of North Dakota v. Jaeger*, 659 F.3d 687, 693 (8th Cir. 2011) (citing *Detroit General Retirement System v. Medtronic, Inc.*, 621 F.3d 800, 804 (8th Cir. 2010) and (citing *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)).

Furthermore, when entertaining a motion to dismiss, the Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the matter to a summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and internal quotations omitted); see also *United States ex rel. Kraxberger v. Kansas City Power and Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (providing in a motion to dismiss, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record"); *Onyiah v. St. Cloud State University*, 655 F. Supp. 2d 948, 960 (D. Minn. 2009). Public documents and agency documents are subject to judicial notice and may be considered on a motion to dismiss. *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999). Defendants' Exhibits to the Answer are matters of public record and agency documents - their actual contents are not subject to reasonable dispute and capable of judicial notice under Fed. R. Evid. 201. Accordingly, Defendant's Exhibits to the Answer should appropriately be considered by the Court.

Moreover, it is not disputed that the Libertarian Party qualified for ballot access as a Party in 2014 in Arkansas, failed to obtain sufficient votes for governor, and so did not retain its "party" status. It is further undisputed – and actually forms an essential part of Plaintiffs' Complaint – that Libertarian Party successfully petitioned to become a "new" political party by filing with the Secretary of State a sufficient number of signatures (at least 10,000 registered voters) in advance of the party filing period. Exhibit 1 to Defendant Secretary's Answer. Plaintiffs now attempt to challenge the "next steps" in the process, qualifying their individual candidates for the 2016 general election ballot.

After qualifying as a party in July of 2015, the Libertarian Party successfully placed 17 of its candidates on the November 2016 General Election ballot. Exhibit 2 to Defendant Secretary's Answer. The ballot access provisions at issue, then, do not operate in concert to freeze the status quo by effectively barring third party or new political party candidates from the ballot. *McLain*, 851 F.2d at 1050. Instead, the ability of third-party candidates to access the ballot provides evidence of the reasonableness of Arkansas' requirements. *Green Party of Arkansas*, 649 F.3d at 684 (citing *Storer*, 415 U.S. at 742). The candidate list for 2016 illustrates the ability of a Libertarian Party candidate to appear on the general election ballot. Exhibit 2 to Defendant's Answer. As shown on the list, there are seventeen (17) Libertarian Party candidates, including one of the named Plaintiffs, Chris Hayes.

Plaintiffs bear a heavy burden when attempting to prove the unconstitutionality of a state statute. "Since a presumption of constitutionality attaches to state legislative enactments, a party seeking to challenge a statute under this standard bears a heavy burden." *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir. 1983) (citations omitted); see also *Branson v. O.F. Mossberg & Sons, Inc.*,

4

221 F.3d 1064, 1065 n.4 (8th Cir. 2000) (stating "state statutes are presumed constitutional, and the plaintiff has the burden to show otherwise"). Plaintiffs did not and cannot meet their burden in this case.

"In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). Here, Plaintiffs are not asking that they be treated the same as similarly situated candidates from other political parties. Rather, they are demanding special treatment. Plaintiffs demand that Ark. Code Ann. § 7-7-203(c)(1) be applied differently to them than it is to other candidates, i.e., that they not be required to file a political practices pledge and a commitment to run for public office as a candidate of the Libertarian Party – and no other party or office. Plaintiffs are not requesting equal treatment, but unconstitutionally favorable treatment.

Plaintiffs do not assert Ark. Code Ann. § 7-7-203(c)(1) treats them differently than other party candidates. Rather, they request that they be treated differently than other candidates because they are required to be nominated by party convention, rather than by party primary. Ark. Code Ann. § 7-7-205(c)(2). This is not the result of unequal treatment. Libertarian Party is a "new" political party (having qualified as a party in Arkansas for each the last three two-year election cycles by petition, after falling short of the minimum vote requirement in the preceding Presidential and Gubernatorial elections). Consistent with U.S. Supreme Court precedent, new political parties are required to have their initial nominations for the general election by convention. *American Party of Texas v. White, Secretary of State*, 415 U.S. 767, 781-82. Defendant Secretary must apply Ark. Code Ann. § 7-7-203(c)(1) evenhandedly; he cannot unconstitutionally favor Libertarian Party or its candidates over other political parties or

candidates simply because Libertarian Party or its candidates lacked sufficient public support in the last Gubernatorial election. *See Green Party of Arkansas v. Martin, Secretary of State*, 649 F.3d 675, 680-87. As stated in *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986), there is "no more force to this argument" than "an argument by a losing candidate that his supporters' constitutional rights were infringed by their failure to participate in the election." 479 U.S. at 198. Defendant Secretary, and the State of Arkansas, cannot be "burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *Id.*

The two Plaintiff "candidates" who failed to file a Political Practices Pledge during the Party filing period will not be placed on the general election ballot, not because of any unequal treatment by Defendant Secretary or Arkansas law, but because those two Plaintiffs (Vaughn and Standiford) failed to follow a statutory requirement that applies to all party candidates, irrespective of party, new or established. Ark. Code Ann. §§ 7-7-101, 7-7-203(c)(1), 7-7-205(c)(2), 7-7-203(c)(3), and 7-7-203(c)(4).

Those provisions of the Arkansas Code accomplished exactly what they were intended and constitutionally permitted to do – it furthered the State's admittedly important and vital interest in requiring candidates demonstrate a significant, measurable quantum of party support prior to their names appearing on the general election ballot. Those provisions of the Arkansas Code are not unconstitutional as applied to Plaintiffs because it did "no more than to visit on [them] a requirement to show a 'significant modicum' of voter support, and [Arkansas] was entitled to require that showing." *Munro*, 479 U.S. at 198. Libertarian Party and its candidates cannot show otherwise.

6

The Supreme Court has explained that "voting is of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "[T]he rights of voters to associate or to choose among candidates are fundamental, but reasonable election restrictions which are generally applicable and evenhanded are justified by the state's important regulatory interests in protecting the integrity and reliability of the electoral process itself." *Coal for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395, 399 (8th Cir. 1985). Thus, reasonable, nondiscriminatory restrictions on election laws are constitutional if they further important regulatory interests. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

States "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, 520 U.S. at 358 (citing *Burdick*, 504 U.S. at 433). The "State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Storer v. Brown*, 415 U.S. 724, 733 (1974) (quoting *Jenness v. Fortson*, 403 U.S. at 442). Thus, First and Fourteenth Amendment challenges to ballot access restrictions are reviewed based on the quality of the burden:

> when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.

*Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063 (citations omitted).

7

In determining the level of review, the Court must first determine whether the challenged laws "'freeze' the status quo by effectively barring all candidates other than major parties," or "could a reasonably diligent candidate be expected to satisfy the requirements." *McLain v. Meier,* 851 F.2d 1045, 1050 (8th Cir. 1988) (citations omitted). If diligent candidates are able to meet the ballot access standards, the requirements are constitutional even if "necessarily arbitrary." *Libertarian Party of North Dakota,* 659 F.3d at 694 (quoting *McLain,* 851 F.2d at 1050). As shown above, the 17 Libertarian Party candidates to file successfully for the 2016 general election obviates any claim to being frozen out of the ballot.

Once it has been determined that the challenged ballot provisions afford "essential equal opportunity for ballot qualification," the "inquiry evolves from strict scrutiny into one of 'reasonableness: Do the challenged laws freeze the status quo by effectively barring all candidates other than those of major parties.'" *Libertarian Party of North Dakota,* 659 F.3d at 694; see also *Green Party of Arkansas v. Martin, Secretary of State* 649 F.3d 675, 680, 685-86 (strict scrutiny not applied when imposed burdens are not severe); *Lawrence v. Blackwell,* 430 F.3d 368, 375 (6th Cir. 2005), *cert. denied,* 547 U.S. 1178 (June 5, 2006) (strict scrutiny not applied); *Wood v. Meadows,* 207 F.3d 708, 716-17 (4th Cir. 2000) (strict scrutiny not applicable to reasonable, nondiscriminatory ballot access restrictions).

Here, the Arkansas Code's ballot access provisions are constitutional because they provide relative parity between Party and independent candidates allowing essentially equal access to the ballot. Further, Arkansas' requirements are a reasonable and rational means of implementing the State's important regulatory interests. *Manifold v. Blunt,* 863 F.2d 1368, 1374 (8th Cir. 1988). The Arkansas statutory scheme is constitutional because it is a reasonable,

8

nondiscriminatory way of achieving the State's important regulatory interests, as discussed more fully herein below.

Arkansas, like other states, has the right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot. As the Supreme Court has said: "The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983).

Requiring those who seek ballot access to make a preliminary showing of support is an important state interest. *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (stating "[t]here is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot"); *Am. Party v. White*, 415 U.S. 767, 782-83 (1974) (stating "the State's admittedly vital interests are sufficiently implicated to insist that political parties appearing on the general ballot demonstrate a significant, measurable quantum of community support"); *Lee v. Keith*, 463 F.3d 763, 769 (7th Cir. 2006) (explaining states "have a strong interest in preventing voter confusion by limiting ballot access to serious candidates who can demonstrate at least some level of political viability"); *Lendall v. Bryant*, 387 F. Supp. 397, 402 (E.D. Ark. 1975) (stating a state "has the right to keep its ballots clear of spurious or frivolous candidates, and in that connection to require one who would run as an independent to demonstrate by nominating petitions that he has at least some substantial public support for his candidacy").

Requiring a preliminary showing of support before a candidate's name is placed on the ballot helps avoid "confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 403 U.S. at 442; see also *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (stating "the State's interest in preserving the integrity of the electoral process and in regulating the number of candidates on the ballot was compelling" and that "a State may require a preliminary showing of significant support before placing a candidate on the general election ballot"). "The State may understandably and properly seek to prevent the clogging of its election machinery with frivolous, fraudulent or confusing candidacies." *McLain v. Meier*, 637 F.2d 1159, 1165 (8th Cir. 1980).

Simply put, a state is not required to give ballot access to any and all persons who may want to run for elected office. Rather, a state has a perfectly legitimate and compelling interest in requiring of a would-be candidate a showing that his candidacy is not frivolous and that his candidacy has a satisfactory level of part support. Arkansas is not required "to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro*, 479 U.S. at 194-95.

To avoid voter confusion, ballot overcrowding, and the presence of frivolous candidacies, the Arkansas ballot access scheme at issue requires a candidate show a minimal amount of support on filing. Such minimal support requirements, i.e., a party certificate of nomination and a political practices pledge, during the party filing period, to be included as a candidate on the general election ballot do not abridge any constitutional limits. Because requiring a candidate show a "significant modicum" of support before the candidate's name is placed on the ballot is

10

undisputedly an important state interest, the Arkansas statutory scheme is constitutional. The statutes achieves legitimate state interests in a reasonable and nondiscriminatory manner.

The Arkansas General Assembly can constitutionally require candidates receive their party nomination and file a political practices pledge during the party filing period in order to advance to the general election. As stated by the Supreme Court, "requiring candidates to demonstrate... that they enjoy a modicum of community support ... is precisely what we have held States are permitted to do." *Munro*, 479 U.S. at 197-98. The Arkansas statutory requirements are a reasonable means of doing "precisely" what the United States Supreme Court has stated the State is "permitted to do."

In an attempt to support their argument that the Arkansas Code creates an undue burden for candidates to get on the general election ballot, Plaintiffs make a number of assertions about themselves as *voters*. This is not sufficient, as discussed more fully, below. Plaintiffs, by their own admission, bring an "as applied" challenge. Thus, Plaintiffs must prove the Arkansas Code imposes an unconstitutional burden on each of them. *See Republican Party v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004). As demonstrated above, the Arkansas Code does not impose an unconstitutional burden on the plaintiffs; it only treats them the same way all other Libertarian Candidates are treated. Libertarian Party successfully concluded its convention for the 2016 General Election and nominated – and timely filed with Defendant Secretary - seventeen (17) for the general election ballot, like Plaintiff Chris Hayes (candidate for Second Congressional District as a Libertarian Party Candidate), **Exhibit 2 to Defendant Secretary's Answer.**

Plaintiffs have provided no evidence that minor political party candidates for state legislative office have historically been excluded from the general election ballot by the

application of the Arkansas Code. Although courts accept as true well-pleaded facts when considering a motion to dismiss, they do not accept as true factually and logically unsupported conjecture.

Like the Washington statute found constitutional by the Supreme Court in *Munro*, the Arkansas Code permits a new party candidate access to the general "election ballot and the opportunity for the candidate to wage a ballot-connected campaign . . . ." *Munro,* 479 U.S. at 199. Accordingly, like the Supreme Court did with the Washington statute, this Court should find that the magnitude of Arkansas Code's "effect on constitutional rights is slight" and that the statute is constitutional. *Id.*

Moreover, "[t]he State may understandably and properly seek to prevent the clogging of its election machinery with frivolous, fraudulent or confusing candidacies." *McLean [II],* 637 F.2d at 1165. That is a compelling state interest served by the Arkansas Code at issue.

This case is not about candidates for the offices of President and Vice President; it is about candidates for state legislative offices pursuant to U.S. Const. Article I §4, cl. 1. Furthermore, the Supreme Court's language in *Storer* indicates ballot restrictions are constitutional as long as they do not impose "too great a burden," an "impossible burden," or an "impractical undertaking." *Storer,* 415 U.S. at 740. Of course, Plaintiffs have not demonstrated that the Arkansas Code imposes a burden of that magnitude on each of them, individually, as applied. Rather, the Arkansas Code simply and reasonably required the plaintiff candidates to file their party nomination certificates, and their political practices pledge, during the party filing period for all candidates, to demonstrate a minimum degree of support before they could be placed on the general election ballot.

Plaintiffs herein do not have standing to sue. First, Plaintiff Robert Chris Hayes, also known as Chris Hayes, is currently on the Arkansas General Election ballot for 2016 as a candidate for U.S. Congress. **Answer to Complaint, Exhibit 2.** In other words, he was timely nominated, and timely filed his paperwork to run for political office. There is no harm to him, whatsoever, for the purported early filing period. His articulation of harm, that he cannot make up his mind quite so early, is spurious, unsupported, and contrary to the facts of record in this case.

Second, as shown on the face of the Complaint, and as seen on Exhibit 2 to the Answer, Plaintiff Libertarian Party of Arkansas, did in fact hold its nominating convention in a timely manner under Arkansas law. Libertarian Party nominated a slate of candidates, and they filed for office during the party filing period in a timely manner in 2015 (just as they had done in 2014 and 2012). **Answer to Complaint, Exhibit 2.** There has been no harm to the Party, nor to the Chairman of the Party.

Third, the remaining putative candidates, Vaughn and Standiford, make absolutely no showing, whatsoever, that they have met the remaining, unchallenged, qualifications to run for office in the State of Arkansas. In other words, they have not filed, or attempted to file, political practices pledges, i.e., a mere notice filing with *de minimus* requirements to assert that each will follow Arkansas law as to campaign finance and other matters.

The Eighth Circuit has stated that Plaintiffs like these do not have standing as "voters." *United States v. Geranis*, ____ F.3d ____ (8th Cir. December 15, 2015), Nos. 13-3394 and 14-3195, 2015 WL 8957488, citing *Nolles v. State Comm. For Reorg of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008). Plaintiffs, as voters, do not show individualized injury necessary to establish

standing in federal court. *Id.* at par. 4. Plaintiffs here do not show how their purported injury *as voters* is actual or imminent. *Id.* at par. 5. Because this is an "as-applied" challenge, by Plaintiffs' own admission, and not a facial challenge to the law itself, the Eighth Circuit concludes that the asserted theory of redressing the purported injury is contrary to clearly established applicable law. *Id.* at par. 5. Generalized grievances, *as voters*, no greater than the public's at large, are not sufficient basis for federal court standing. *Id.* at par. 6 (*citing Hollingsworth v. Perry*, 133 S.Ct 2652, 2662 (2013)).

In this matter, the applicable ballot access methods, and specifically the identical timing of the "party filing period" for all political parties, are also those necessary to achieve two essential policy goals of the Arkansas legislature: First, preventing "sore loser" candidates from the major party from running another race for the same office. Second, preventing any candidate from running for election under more than one party label, i.e., fusion candidacies. Both are prohibited by Arkansas law. Both are well-established constitutional methods of restricting access to the general election ballot. *Storer v. Brown*, 415 U.S. 724, 736 (state can prohibit sore losers from running second race); *Timmons, Acting Director v. Twin Cities Area New Party*, 520 U.S. 351, 361-70 (1997) *reversing, Twin Cities Area New Party v. McKenna*, 73 F.3d 196 (8th Cir. 1996) (fusion candidacies (in more than one political party) can be prohibited). Arkansas' ballot access methods implement these two important policies; there is nothing unconstitutional about doing so. Having a single party filing period vindicates those two interests.

Defendant Secretary denies each and every material allegation made in the Response to the Amended Motion to Dismiss. Defendant Secretary asks the Court to dismiss the Complaint

for the reasons set forth in the Amended Motion and Reply, above; to deny Plaintiffs the relief they seek; to grant Defendant such additional relief to which he may be entitled under the circumstances; and to deny Plaintiffs any relief against Defendant Secretary.

**WHEREFORE**, and for the foregoing reasons, Defendant Secretary of State Mark Martin, in his official capacity, prays that this Court grant Defendant the relief he seeks herein; that the Court deny Plaintiffs any of the relief they seek; that the Court dismiss Plaintiffs' Complaint; that the Court deny Plaintiffs any injunctive relief; that the Court deny Plaintiffs' their request for any costs, fees, or expenses; and that the Court grant Defendant such additional relief to which he may be entitled under the circumstances.

Dated this 13th day of January, 2016.

Respectfully submitted,

HONORABLE MARK MARTIN
ARKANSAS SECRETARY OF STATE
In his Official Capacity, Defendant

By: _____
A.J. Kelly
General Counsel and
Deputy Secretary of State
PO Box 251570
Little Rock, AR  72225-1570
(501) 682-3401
Fax: (501) 682-1213

*Attorney for Defendant*
*Arkansas Secretary of State*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 13th day of January, 2016, I have served the foregoing via the electronic filing system in the Federal District Court Clerk's Office (CM/ECF):

James C. Linger
1710 South Boston Avenue
Tulsa, OK 74119-4810

W. Whitfield Hyman
300 North 6th Street
Fort Smith, AR 72901

_____
A.J. Kelly

16