IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

—————————————————————
                                                          )
LIBERTARIAN PARTY OF ARKANSAS,        )
KRISTIN VAUGHN, ROBERT CHRIS          )
HAYES, DEBRAH STANDIFORD, and         )
MICHAEL PAKKO,              …..Plaintiff,   )
                                                          )
 v.                                                      )        Case No. 4:15-cv-635-JM
                                                          )
MARK MARTIN, in his official capacity as     )
Secretary of State for the State of Arkansas,   )
                                    …..Defendant.)
—————————————————————)

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION

I. STATEMENT OF THE CASE

The instant case is an election law and ballot access case on behalf of four registered voters

and supporters of the Libertarian Party in the State of Arkansas and the Libertarian Party of

Arkansas, which, unlike the two major political parties, must conduct a political party convention

under Arkansas law in order to nominate candidates for elective office.  The Plaintiffs are asking

in the case at bar that the Libertarian Party of Arkansas (hereinafter "LPAR") be permitted to

conduct a supplemental nominating convention on Saturday, February 27, 2016, in order to correct,

substitute, and add nominees for the LPAR for the General Election to be conducted on November

8, 2016.  The particular facts and witnesses which will be presented to the Court at the hearing on

Plaintiffs' Motion for Preliminary Injunction will show the effects on the LPAR of requiring all

the LPAR's nominees to be selected at the first nominating convention conducted on October 24,

2015, more than one year before the November 8, 2016, General Election.  This case concerns the

important question of whether Arkansas may require a minor political party to select its nominees

for the General Election more than four months before the major parties select their nominees, as well as more than one year before the General Election.  Answering this question poses the constitutional issue of whether the Arkansas requirement in question is necessary to further a compelling state interest.

The laws in question effective for the 2016 Arkansas General Election cycle are as follows, to-wit:

Ark. Code Ann. § 7-7-101

The name of no person shall be printed on the ballot in any general or special election in this state as a candidate for election to any office unless the person shall have been certified as a nominee selected pursuant to this subchapter.

Ark. Code Ann. § 7-7-203(c)(1)

(c)(1) The party filing period shall be a one-week period beginning at 12:00 noon on the first Monday in November preceding the general primary election and ending at 12:00 noon on the seventh day thereafter.

Ark. Code Ann.,§ 7-7-205(c)(2) and 7-7-205 (c)(3)

(c)(2)  A new political party formed by the petition process shall nominate candidates by convention for the first general election after certification.

(c)(3)  A candidate nominated by convention shall file a political practices pledge with the Secretary of State or county clerk, as the case may be, during the party filing period.


II. STANDARD OF REVIEW

In deciding whether or not to grant Plaintiffs' Motion for Preliminary Injunction filed herein, the Trial Court must consider both the standard of review to be applied in a preliminary injunction request as well as the standard of review required in evaluating ballot access and election laws.  The standard of review to be used in judging whether or not Plaintiffs are entitled to a preliminary injunction requires that the Plaintiffs demonstrate that: (1) they have a substantial likelihood of prevailing on the merits; (2) they will suffer irreparable injury if the preliminary

injunction is not issued; (3) the threatened injury to the Plaintiffs must outweigh what other injuries the Defendant would suffer if the preliminary injunction issues; and (4) issuance of the proposed preliminary injunction would not be adverse to the public interest. *United Industries Corporation v. Clorox Company*, 140 F.3d 1175, 1178-1179 (8th Cir. 1998); *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

Because the Plaintiffs would suffer irreparable injury if they are not allowed to conduct a supplemental nominating convention in order to correct, substitute, and add party nominees for the LPAR for the Arkansas General Election of November 8, 2016, there is no possible constitutionally recognized injury to the Defendant which would be greater than the grave injury to the fundamental rights which would be suffered by the Plaintiffs if they are not allowed to vote for their preferred candidates in Arkansas and have sufficient time to select and judge those candidates on a basis and timeline which is closer to the general election and at least equal to what is allowed for the major parties in Arkansas.  While the laws in question will revert back after 2016 to a nominating deadline for new political parties which is nearer the General Election, it will still be many months before the major political parties have to select their nominees.  Further, issuance of the proposed preliminary injunction would be in the public interest rather than adverse to the public interest.  Particularly, the harm to voters and the public is the damage to "political dialogue and free expression" that is done when political parties are unnecessarily restricted from participating in the public discourse. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, at 594 (6th Cir. 2006).  As the Eighth Circuit Court of Appeals has stated in reviewing election laws: "our primary concern is not the interest of [the] candidate . . . but rather, the interest of the voters who choose to associate together to express their support for [that] candidacy and the views . . .

espoused." *Miller v. Moore*, 169 F.3d 1119, 1123 (8th Cir. 1999), quoting *Anderson v. Celebrezze*, 406 U.S. 780, 806 (1983).

Also, the Trial Court in deciding whether or not to grant Plaintiffs' request for a preliminary injunction should concentrate primarily on the issue of whether or not the Plaintiffs are likely to prevail on the merits in the instant case. Thus, the Court should next look to the standard of review in judging ballot access and election laws which affect minor political party candidates and their supporters--particularly as same relate to the unnecessarily early nominating convention deadline in Arkansas, the relatively limited time to review and consider potential candidates and developing political issues and events, and the particular facts in the instant case. No better example of some of the negative impacts caused by the laws in question can be given than the recent indictment of the current Republican sheriff, Kelly Cradduck, in Benton County, Arkansas, who was just arrested and charged with a felony and a misdemeanor involving tampering with evidence and public documents. While the Republican voters will be able to consider this at the party primary on March 1, 2016, in evaluating Sheriff Cradduck, along with the other Republican candidates, Paul Pillaro, Timothy Filbeck, and Shawn Holloway, the LPAR can do nothing without relief from this Court to respond to these new political developments.

As to the standard of review in a ballot access and election law case, the analytical test applied by the United States Supreme Court in *Anderson v. Celebrezze*, *Id*., is appropriate. In Anderson the United States Supreme Court set forth a standard to be used in determining whether election laws are unconstitutionally oppressive of potential voter's rights. The Supreme Court held that such constitutional challenges to specific provisions of a state's election laws cannot be resolved by litmus-paper tests that will separate valid from invalid restrictions, but rather that the Trial Court " ... must resolve such a challenge by an analytical process that parallels its work in

ordinary litigation." *Anderson v. Celebrezze*, 406 U.S., at 789.  The Supreme Court then set forth

three criteria which the Trial Court is expected to follow:

> It must first consider the character and magnitude of the asserted injury to the rights
> protected by the First and Fourteenth Amendments that the Plaintiff seeks to
> vindicate. It then must identify and evaluate the precise interests put forward by the
> State as justifications for the burden imposed by its rules. In passing judgment, the
> Court must not only determine the legitimacy and strength of each of those interests;
> it also must consider the extent to which those interests make it necessary to burden
> the Plaintiffs rights. Only after weighing all these facts is the reviewing Court in a
> position to decide whether the challenged provision is unconstitutional. *Anderson v.
> Celebrezze*, 460 U.S., at 789.

Thus, the Supreme Court has set forth the standard which the Trial Court is to use in analyzing

specific provisions of ballot access laws as are involved in the instant action.  In fact, " ... because

the interests of minor parties and independent candidates are not well represented in state

legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative

decisionmaking may warrant more careful judicial scrutiny." *Anderson v. Celebrezze*, 460 U.S., at

793, n.16.  After all, "the State may not be a 'wholly independent or neutral arbiter' as it is

controlled by the political parties in power, 'which presumably have an incentive to shape the rules

of the electoral game to their own benefit.'" *Blackwell*, 462 F.3d at 587 (quoting from *Clingman

v. Beaver*, 544 U.S. 581 (2005) (O'Conner, J., concurring).  Since the case at bar involves election

laws that burden a minor political party, and the corresponding constitutional right of individuals

to political expression and association, the appropriate standard of review which is required for

this Court is strict scrutiny, so that state laws cannot stand unless they "further compelling state

interests . . . that cannot be served equally well in significantly less burdensome ways." *American

Party of Texas v. White*, 415 U.S. 767, at 780-781 (1974).

Further, the U.S. Supreme Court has noted that the First and Fourteenth Amendments

establish "[t]he right of citizens to create **and develop** new political parties." [Emphasis added].

*Norman v. Reed*, 502 U.S. 279, 288 (1992).  See also *Green Party of Arkansas v. Priest*, 159 F.Supp.2d 1140, at 1144 (E.D. Ark. 2001).  Plaintiffs would suggest to the Court that it is significant that the U.S. Supreme Court did not only mention the right to create new political parties, but also added the right to develop new political parties.  "New parties struggling for their place **must have the time and opportunity** to organize in order to meet reasonable requirements for ballot position, **just as the old parties have had in the past**." [Emphasis added].  *Williams v. Rhodes*, 393 U.S. 23, at 32 (1968).  We can only imagine the problems that would occur if the Republican and Democratic parties in Arkansas had to select their nominees a full year before the next General Election.

> It is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. * * *
>
> "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.  It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties . . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas.  Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs; many other challenges to the status quo have in time made their way into the political mainstream. . . . In short, the primary values protected by the First Amendment—"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," New York Times Co. v. Sullivan, 376 U.S. 254, at 270 (1964)—are served when election campaigns are not monopolized by the existing political parties." *Anderson v. Celebrezze*, 460 U.S. at 793-794. (quoted with approval of four judges in *Manifold v. Blunt*, 873 F.2d 178 (8th Cir. 1989)).

Therefore, the first consideration the Trial Court must look to is the character and magnitude of the asserted injury to the Plaintiffs' First and Fourteenth Amendment rights. Since in the instant case the injury to the rights of the Plaintiffs would limit the LPAR in its nominating

process for the Arkansas ballot, there cannot be a dispute in the least that the damage would be substantial and of a fundamental nature.  Federal Appellate Courts have noted that when election deadlines are far in advance of an election, they force minor parties to recruit candidates at a time when major party candidates are not known and when voters are not politically engaged.  See *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 594 (6th Cir. 2006) and *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 880 (3rd Cir. 1997).

The next step the Court must look to under the *Anderson* test is the identification and evaluation of the precise interests put forth by the State of Arkansas as justifications for the burden imposed by the laws in question. While Arkansas does have a right to properly supervise elections in Arkansas, election restrictions which impact minor political parties and their supporters must be necessary to serve a compelling state interest.  The teaching of the United States Supreme Court is that:

> "even when pursuing a legitimate interest, a state may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973), and we have required that states adopt the **least drastic means** to achieve their ends. *Lubin v. Panish*, 415 U.S. 709, 716 . . .; *Williams v. Rhodes*, 393 U.S. at 31-33 . . .. **This requirement is particularly important where restrictions on access to the ballot are involved**. The states' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [emphasis added]. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 185 (1979).

### III. ARGUMENT AND AUTHORITIES

The LPAR is the only minor political party to obtain recognition for ballot status in Arkansas for the 2015-2016 election cycle.  Because the LPAR is a new political party in Arkansas, it does not nominate its candidates for the General Election at a primary election, but must nominate its candidates by convention.  Ark. Code Ann., § 7-7-205(c)(2).  Any candidates nominated by the convention are required to file a political practice pledge with the Secretary of

State or County Clerk during the party filing period.  Ark. Code Ann., § 7-7-205(c)(3).  The party

filing period (i.e., for the Republican and Democratic parties) is currently set for the 2016 election

cycle for a one-week period beginning at noon on the first Monday in November preceding the

General Primary Election (viz.: November 2, 2015) and ending at noon on the 7th day thereafter

(viz.: November 9, 2015).  Because the party nominating convention for the LPAR has to be

completed before the nominating period under current law, it was necessary for the LPAR to have

its nominating convention in October of 2015.  Unlike the primary elections for the Republicans

and Democrats in Arkansas (where Arkansas voters can simply cast their votes after a long primary

election season at voting precincts near where they live), the Libertarians in Arkansas have to have

the nominating convention of the LPAR at a central location in Arkansas, since all candidates and

Libertarian voters must travel to the nominating convention.  Because of jobs and family

commitments, the convention was held on Saturday, October 24, 2015, in North Little Rock,

Arkansas.  It was felt that the next available Saturday, October 31, 2015, would not be as

convenient for the candidates and voters because it would be on Halloween and might adversely

impact those candidates and voters who had small children, thus lessening attendance.  In any

event, either October date was more than one year from the date of the General Election in

Arkansas on November 8, 2016, and more than four months before the Republicans and Democrats

would hold their primary election to select their candidates for the same November 2016 General

Election.  The new, earlier deadline to conduct the LPAR nominating convention has been moved

twice in recent years.  In 2013, it was moved from May to early March, and now has been moved

from March to early November of the year before the General Election.  The Republican and

Democratic parties have passed these newer deadlines for new political parties which make them

select the minor parties' final candidates at a time when the major parties' selection process is just

getting underway.  As a result, the LPAR was hard pressed to come up with a full slate of candidates.

As set forth in Plaintiffs' Complaint [Doc. 1], three of the individual Plaintiffs (Vaughn, Hayes, and Standiford) are not only Arkansas registered voters, but were unable to determine if they could be candidates for the LPAR for the 2016 General Election because of the earliness of the October 24, 2015 Nominating Convention.  The other individual Plaintiff (Pakko) is the current Chair of the Plaintiff LPAR and, thus, is familiar with the negative impact of having such an early nominating convention.  All the individual Plaintiffs wish to have the right to cast their votes effectively for Libertarian candidates in Arkansas in 2016.  However, the workings of the current laws in question, not only require an unnecessarily early decision, but substantially limit the time for Libertarian voters in Arkansas to consider late breaking developments and to find out who their candidates are and participate in the political process with the candidates during the more than four months before the Republicans and Democrats have their primary election. One candidate which the LPAR nominated on October 24, 2015, has moved out of state (Nathan LaFrance, candidate for U.S. House District 3) and only with the permission of Arkansas Governor Asa Hutchinson have the LPAR been able to take steps to replace Mr. LaFrance as the party nominee for U.S. House District 3.  However, under existing Arkansas law, there is no way for the party to correct, substitute, or add additional nominees for the candidates nominated initially at its nominating convention on October 24, 2015, which is well priori to a time when most voters begin to show an interest in politics.

Specifically, what the Plaintiffs are asking for in affirmative relief from the Court is that they be allowed to conduct a further nominating convention to correct or supplement the convention held on October 24, 2015, no later than the date of the preferential primary election

in Arkansas for the Republican and Democratic parties (i.e., March 1, 2016). Ark. Code Ann. §§
7-7-202(a) and 7-7-203(b). In fact, the State of Arkansas will not even be able to start to finalize
its General Election ballot for November 8, 2016, until after the general primary runoff election
for the major parties, which will be conducted on March 22, 2016. This remedy is necessary
because of the unnecessarily early convention which the LPAR was forced to conduct on
October 24, 2015, and the resulting loss of potential candidates, campaigning time, political
discussion, and substitution or replacement candidates for those candidates who have left the
state or cannot be a candidate for other reasons. Testimony as to candidates who are to be either
added as nominees or removed as nominees will be presented at the hearing for preliminary
injunction. As  demonstrated in the Affidavit of Michael Pakko attached to Plaintiffs' Motion
for Preliminary Injunction (Plaintiffs' Exhibit "1"), there is harm in having a nominating
convention well before the General Election and the Primary Election of the major parties in
Arkansas. Because of the early date of the October 24, 2015, nominating convention, many
individuals were not at that time able to make a commitment for an election that was more than a
year off and many of the political issues for the next election were not yet well formed or known.
Not only are new political developments constantly occurring, but there is no necessity to have a
minor party's candidate selected at a convention many months before the Republicans and
Democrats in Arkansas select their candidates in a primary election on March 1, 2016, and a
subsequent run-off primary election on March 22, 2016, if necessary. On the other hand, the
Libertarians, in many cases, had little time to get to know their candidates who showed up at
their nominating convention on October 24, 2015, let alone, have the time for extended
discussion and review of developing political events in contrast to what is allowed for the
Republican and Democratic parties.

Other Courts have recognized that ". . . alternative party candidates and major party candidates are not similarly-situated.  Because Democrats and Republicans will participate in June primaries, there are valid reasons of administrative necessity and voter education for requiring these candidates to file petitions in April.  Such reasons do not apply to alternative party candidates who cannot compete in primaries and will not appear on any ballot until November."  *Counsel of Alternative Political Parties v. Hooks*, 121 F.3d 876, 882-883 (3rd Cir. 1997).  "[S]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike."  *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).  However, in Arkansas the laws in question do not even have the virtue of treating minor party nominations and major party nominations equally, but requires the Libertarian Party to select its nominees well before the major parties select their nominees so as to allow the Republican and Democratic parties to include consideration of all events prior to their primary elections, but after the Libertarian Party has been forced to select its nominees.  "Other courts have found requirements for party nomination by minor parties that are set either before or at the same time as the major parties to be unconstitutional as a violation of equal protection under the Fourteenth Amendment to the U.S. Constitution."  *Whig Party of Alabama v. Siegleman*, 500 F.Supp. 1195, 1203-1205 (N.D. Ala., S.D., 1980)(wherein the Court found Alabama's law requiring minor political parties to file their petitions on the date of the first primary election, which was roughly two months before the General Election and before they could ascertain the names of their most formidable opposition candidates of the major parties, unconstitutional and allowed the deadline to be six days after the date for the second primary election for the major parties); *Toporek v. South Carolina State Election Com'n*., 362 F.Supp. 613, 619-620 (D.S.C., Columbia Div., 1973)(which declared unconstitutional the requirement that a minor party hold its nominating convention not

later than the time for closing polls on the date of the primary election and five months before the General Election); and *United Citizens Party v. South Carolina State Election Com'n*., 319 F.Supp. 784, 788-789 (D.S.C., Columbia Div., 1970)(which declared unconstitutional a requirement for the minor political party to submit nominees no later than the date for closing of primary entries for the major parties and some seven months prior to the General Election).  Not only are the election requirements in question herein worse than the requirements condemned in Alabama and South Carolina hereinabove, but the same problem exists in the advantage given to the major political parties because "the already entrenched major political parties are well aware of the minor parties' and independent nominees long before the date by which they (the major parties) are required to declare their nominees in the office of the Secretary of State."  *Whig Party of Alabama v. Siegleman*, 500 F.Supp. at 1204.

## IV. CONCLUSION

WHEREFORE, the Plaintiffs herein pray that this Court will grant the relief requested in their Complaint filed herein and grant Plaintiffs' Motion for Preliminary Injunction forthwith.

Respectfully submitted this 22nd day of January, 2016.

> LIBERTARIAN PARTY OF ARKANSAS,
> KRISTIN VAUGHN,
> ROBERT CHRIS HAYES,
> DEBRAH STANDIFORD, and
> MICHAEL PAKKO, Plaintiffs
>
> /s/ James C. Linger
> JAMES C. LINGER, OBA#5441
> 1710 South Boston Avenue
> Tulsa, OK 74119-4810
> (918) 585-2797 Telephone
> (918) 583-8283 Facsimile
> bostonbarristers@tulsacoxmail.com

W. Whitfield Hyman, ABN # 2013-237
King Law Group
300 North 6th Street
Fort Smith, Arkansas 72901
(479) 782-1125 Telephone
(479) 316-2252 Facsimile
 william.hyman@gmail.com

*Counsel for Plaintiffs*

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been served on all counsel

of record vie the Court's CM/ECF e-mail notification system on the 22nd day of January, 2016.

<u>/s/ James C. Linger</u>
James C. Linger