IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF ARKANSAS,<br>KRISTIN VAUGHN, ROBERT CHRIS<br>HAYES, DEBRAH STANDIFORD, and<br>MICHAEL PAKKO,          …..Plaintiffs,<br><br>v.<br><br>MARK MARTIN, in his official capacity as<br>Secretary of State for the State of Arkansas,<br>          …..Defendant.) | Case No. 4:15-cv-635-JM |

# ATTACHMENT

# PLAINTIFFS' EXHIBIT "3"

# AFFIDAVIT OF JAMES C. LINGER

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

_____
)
LIBERTARIAN PARTY OF ARKANSAS,          )
et al.,                    .....Plaintiffs, )
                                        )
   v.                                   )      Case No. 4:15-cv-635-JM
                                        )
MARK MARTIN, in his official capacity as )
Secretary of State for the State of Arkansas, )
                    .....Defendant.)     )
_____)

## AFFIDAVIT OF JAMES C. LINGER

James C. Linger, of legal age, being first duly sworn upon oath, deposes and states:

1.  I am a resident of Tulsa, Oklahoma, and make this Affidavit with the knowledge that it is to be used for the purpose of evaluating a motion to obtain attorney fees on behalf of W. Whitfield Hyman and myself, counsel for the Plaintiffs in the above-referenced case.

2.  I practice law and have an office in Tulsa, Oklahoma, and am a member of the Bar of the State of Oklahoma, the Cherokee Nation, the United States District Court for the Northern District of Texas, Northern, Eastern, and Western Districts of Oklahoma, and the United States Court of Appeals for the 5th Circuit, 6th Circuit, 8th Circuit, and 10th Circuit, and the Supreme Court of the United States.  I was admitted *pro hac vice* to the United States District Court for the Eastern District of Arkansas for the instant case.  I have been a practicing lawyer since April of 1977, and have since that time been in the continuous practice of law, with extensive trial and appellate experience in both state and federal courts.  The bulk of my experience and specialization has been in the areas of constitutional and civil rights litigation, legal malpractice, probate, personal injury, business contract and tort law, and criminal defense law.  I have represented and advised various political parties and political groups in regard to ballot access

law, voter registration laws, ballot format laws, related Title 42, U.S. Code, § 1983 cases

thereon, First Amendment civil rights cases, and cases involving litigation concerning challenges

to what is known as the Fully Informed Voter Amendment as it relates to the attempt to have a

constitutional amendment approving term limits added to the United States Constitution.  Among

my former election law clients are Ralph Nader, Dr. Benjamin Spock, former Senator Eugene

McCarthy, Dr. Lenora Fulani, former Congressman Ron Paul, former Governor Gary Johnson,

former Congressman Bob Barr, and additional minor political parties besides the Libertarian,

such as the Constitution, Green, Reform, Populist, Prohibition, Socialist Workers, New Alliance,

Natural Law, Socialist, and Rainbow Coalition.

     3.   I was first contacted on July 27, 2015, about challenging the ballot access laws of

Arkansas as they relate to requirement that nominating conventions for newly recognized

political parties in Arkansas be conducted before the filing period for political party candidates

and several months prior to the preferential primary election for the major political parties.

Although the Libertarian Party of Arkansas was unable to obtain an Arkansas lawyer to handle

the case without assistance of out of state counsel, I was told that they would be able to obtain an

attorney in Fort Smith who would be willing to serve as local counsel for the case if I would do

the bulk of the work.  After review of the Arkansas election laws as they relate to newly

recognized political parties, the exclusion of primary elections for new political parties, the

requirement that new political parties nominate at a convention, the relationship to the

preferential primaries for the Republican and Democratic parties in Arkansas, and the

requirements for candidate filings and related matters, I determined that a challenge under 42

U.S.C. § 1983 to Arkansas's aforesaid election laws as same relate to new political parties and

the particular problems created by a nominating convention conducted before candidate filings

and significantly before the preferential primary for the Republican and Democratic parties would probably be successful if filed in a timely manner before the special nominating convention and a subsequent nominating convention prior to the preferential primary elections for the major political parties in Arkansas so that the Court could make a ruling without disrupting the elections and the printing of the ballots.  However, I indicated to my potential clients that I was in the process of preparing for a first degree murder and shooting with intent to kill case, which was set for jury trial for August 17, 2015, in the District Court of Tulsa County, Oklahoma, along with pretrial preparation therefor.  Since the murder case did go to trial and lasted approximately ten days, before not guilty verdicts were returned, I had limited time to work on the case until September.

4.  My clients had obtained the necessary services of local counsel in Fort Smith, Arkansas, namely: W. Whitfield Hyman, for the purpose of serving as local counsel and assisting me in the presentation of a § 1983 civil rights action challenging the Arkansas election laws for new political parties and the particular timing and requirements for conducting nominating conventions.  I made contact with Mr. Hyman and discussed the case and his respective duties with him.  The individuals supporting the challenge to the Arkansas election laws in question were members of the Libertarian party of Arkansas, which was newly recognized under Arkansas law.  One of the individuals, Dr. Michael Pakko, was Chair of the Libertarian Party of Arkansas, and knew that the Libertarian party of Arkansas might face similar problems in the future as to having to conduct an early nominating convention well before the preferential primary elections for the major parties in Arkansas—even when the laws in question reverted back to a later date in the election cycle after 2016.  My local counsel, W. Whitfield Hyman, is a member of the Libertarian Party of Arkansas.

3

5.   The supporters of the instant lawsuit were able to provide $3,000.00 for a retainer for attorney fees and costs.  I agreed to represent them on the aforementioned basis with a contract that would reimburse them the $3,000.00 if we were successful and recovered attorney fees and costs pursuant to 42 U.S.C. § 1988, but would not charge them further for any attorney fees, costs, or expenses if we were unsuccessful in the case.  It is my practice to require significant legal retainers only on those civil rights cases which I feel are either long shots or where the clients are financially well off.  In most cases, civil rights litigation under 42 U.S.C. § 1983 is analogous to contingency fees in personal injury litigation, wherein the lawyer must prevail for his client in order to receive remuneration.

6.   I am attaching a copy of my time sheets for the instant case to this Affidavit of mine, marking it as Exhibit "4", and incorporating it in this Affidavit as though fully set forth herein. These time sheets are taken from my time records which were kept by me contemporaneously with the work performed in this case and maintained in my office's billing records.

7.  I have deleted those hours spent on the case which related to nonproductive matters as well as not listing most of the extensive work assistance I received from my legal assistant.  I have not requested any fees in regard to non-charged work, but have represented it in my time sheets by the notation N/C for no charge with the time performed by me set forth after the description of the work done for comparison by the Court.  Further, I have requested $300.00 an hour for my work in the instant case, except as to travel time between Tulsa, Oklahoma, and Little Rock, Arkansas, for which I am requesting $250.00 an hour.  Additionally, I only charged for one-half my time for the hearing conducted before the Court on February 19, 2016, did not charge for my travel time to and from Little Rock for the hearing on February 19, 2016, and no

4

charged some of my hours as they related to said hearing.  My normal office hourly rate for non-election law cases is $250.00 per hour.

    8.  I was assisted in my preparation for this case by the fact that I had previously been Counsel in the case of *Moore v. Martin* in the U.S. District Court for the Eastern District of Arkansas before Judge Moody, which allowed me to become familiar with both the Local Rules and some of the election laws and attorneys involved in the case at bar.  I felt the fact situation in the instant case was actually stronger than the fact situation presented by the foregoing *Moore v. Martin* case.

    9.  My time sheets for the instant case (Plaintiffs' Exhibit "4") reflect a total of 121.6 hours worked by myself (minus 27.4 hours for which I am not charging or requesting compensation herein).  Therefore, I am requesting 94.2 hours in compensatable time for my work in this case.  The rate of compensation I am requesting is as follows:  78.5 hours at $300.00 per hour for work done from July 20, 2015 to July 29, 2016, and 15.7 hours at $250.00 per hour for travel time between Tulsa, Oklahoma and Little Rock, Arkansas, for a total attorney fee of $27,475.00.  My normal hourly rate for office work performed by myself is $250.00 per hour, and is regularly billed and paid by my clients.  I sometimes charge a higher hourly rate when I am required to set aside other work and do an expedited case or in an area where I believe I have a great deal of experience and specialization such as is done in an election law case.  In the instant case, while unsuccessful in obtaining preliminary injunctive relief or obtaining ballot access for the LPAR's new candidates nominated on February 27, 2016, I did find the granting of declaratory relief as to the unconstitutionality of the laws in question of importance because of its impact on the election law that will go back into effect in 2017 for the next election cycle which still requires newly recognized political parties in Arkansas to conduct nominating

conventions well before the preferential primary elections of the major political parties in Arkansas.  I note particularly that the trial Court put emphasis in its order of July 15, 2016, on the fact that the requirements for the LPAR and any new political parties were 113 days before the preferential primary elections for the major political parties and that the Secretary of State had produced no State interest making this necessary or serving a State interest.

10.  I found Counsel for the Defendant, both Ms. Kelly and Mr. Rhodes, to be very cooperative, professional, and helpful in reaching stipulations and agreements so that the case could be presented in an orderly and concise manner so as to save time and be clearly understood as to the issues involved.  I do feel that this saved some time and resulted in a good presentation to the Court.

11.  In regard to my costs and expenses in the instant case, attached to this Affidavit are my costs and expense statements for the instant case, which are marked Plaintiffs' Exhibit "5", and incorporated in this Affidavit as though fully set forth herein.  This statement reflects the following: (1) Certificate of Good Standing for James Carter Linger from the U.S. District Court for the Northern District of Oklahoma, which was necessary to support my *pro hac vice* motion, $18.00; (2) Fed-Ex to Whit Hyman, 10/9/2015, $23.08; (3) LaQuinta Inn, Little Rock, 2/18-19/2016, $96.60; and (4) LaQuinta Inn, Little Rock, 7/10-11/2016, $79.70; for a total of non-taxable costs in the amount of $217.38.  The above expenses all represent items which I normally bill my clients and which they pay.  While I am not requesting reimbursement for copying expenses and long distance telephone expenses herein, because that is not my normal practice; I have in the past billed some of my corporate clients for such expenses when they have reached a substantial level.

6

12. In regard to my time sheets as reflected in Plaintiffs' Exhibit "4" herein, I feel that they are self-explanatory and are understandable when compared with my Affidavit and the Affidavit filed contemporaneously herein by attorney W. Whitfield Hyman (Plaintiffs' Exhibit "1"). Mr. Hyman and myself reviewed our time records for the purpose of discussing no charge hours, potential duplication and unnecessary work, reduced time charged because of the lack of success on the Motion for Preliminary Injunction, the use of the transcript of the hearing of February 19, 2016, in the non-jury trial conducted on July 11, 2016, and the extent of necessary and significant work in the case at bar. I feel that the 23.0 no charge hours of Mr. Hyman, the 27.4 no charge of myself, and other adjustments and reductions to our fee requests are reasonable and justified.

13. It is my belief that the hours reflected on my time sheets (Plaintiffs' Exhibit "4") were reasonably expended on behalf of my clients. Further, I believe the hours expended by attorney W. Whitfield Hyman were reasonably expended on behalf of our clients and were necessary for the presentation of the instant case and did not involve unnecessary duplication of work. I note that Mr. Hyman is requesting $190.00 per hour for his work. I feel this hourly rate is reasonable. I found Mr. Hyman to be a very good attorney who was very helpful in his role as local Counsel. While I appreciate Mr. Hyman stating in his Affidavit that it is his professional opinion that my hourly fee should be $350.00 per hour, I am only requesting $300.00 per hour for my election law work, and $250.00 per hour for my chargeable travel time between Tulsa, Oklahoma, and Little Rock, Arkansas, to the date of the filing of our Application for Attorney Fees. My opinion is based on my experience in my law practice and other civil rights and federal cases I have handled, as well as the guidelines laid down in the cases of *Hensley v. Eckerhart*, 461 U.S. 424, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983); *Farrar v. Hobby*, 506 U.S. 103,

121 L.Ed.2d 494, 113 S.Ct. 566 (1992); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983); *Keslar v. Bartu*, 201 F.3d 1016, 1018 (8th Cir. 2000); and *Warnock v. Archer*, 380 F.3d 1076 (8th Cir. 2004).

     Further Affiant sayeth not.

/s/ James C. Linger
James C. Linger

STATE OF OKLAHOMA    )
                           ) ss.
COUNTY OF TULSA        )

## OATH

     Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared James C. Linger, who, upon his oath, acknowledged that he has read the foregoing Affidavit and the statements therein are true to the best of his knowledge, information and belief.

     Witness my hand and official seal on this 29th day of July, 2016.

/s/ Vickie L. Caudle
Notary Public

Commission (and Expiration):

(SEAL)

VICKIE L. CAUDLE
Notary Public
State of Oklahoma
Commission # 03012535 Expires 10/06/19

8