IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |
|---|---|
| LIBERTARIAN PARTY OF ARKANSAS, KRISTIN VAUGHN, ROBERT CHRIS HAYES, DEBRAH STANDIFORD, and MICHAEL PAKKO,     …..Plaintiffs, <br><br> v. <br><br> MARK MARTIN, in his official capacity as Secretary of State for the State of Arkansas,     …..Defendant. | ) ) ) ) ) ) ) )  Case No. 4:15-cv-635-JM ) ) ) ) ) |

PLAINTIFFS' RESPONSE AND MEMORANDUM BRIEF
IN OPPOSITION TO DEFENDANT'S OBJECTIONS
AND RESPONSE TO PLAINTIFFS' REQUEST FOR ATTORNEY FEES

On July 29, 2016, pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d)(2), and L. R. 54.1, the Plaintiffs filed a Motion for Attorney Fees and Supporting Memorandum Brief [Docs. Nos. 53 and 54]. On August 12, 2016, Defendant filed Objections and Response to Plaintiffs' Request for Attorney Fees and Supporting Memorandum Brief [Docs. Nos. 57 and 58]. Plaintiffs now file their Response and Memorandum Brief in Opposition to Defendant's Objections and Response to Plaintiffs' Request for Attorney Fees.

Plaintiffs are prevailing parties for purposes of granting attorney fees.

Contrary to the assertion of Defendant, the Plaintiffs should be considered prevailing parties for purposes of granting attorney fees. The United States Supreme Court has noted that a plaintiff is a prevailing party where it "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefits the parties sought in bringing suit.'" *State Teachers Asn'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-792 (1989), citing *Nadeau v. Helgemoe*, 581 F.2d

275, 278-279 (1st Cir. 1978). Also see, *Hensley v. Eckerhart*, 461 U.S. 424, at 433 (1983). For a party to be considered a "prevailing party" under 42 U.S. Code, § 1988, there should be some form of judicial relief such as a declaratory judgment or injunctive relief or monetary damages. *Hewitt v. Helms*, 482 U.S. 755, 759-760 (1987). The U.S. Court of Appeals for the Eighth Circuit in the case of *Jacobson v. City of Coates*, 171 F.3d 1163 (8th Cir. 1999) reversed a trial Judge's denial of attorney fees requested pursuant to 42 U.S. Code, § 1988, where the District Court characterized appellant's victory as "technical and insignificant," thereby precluding prevailing party status. In reversing the District Court, the Eighth Circuit noted that the District Court had determined that one of two challenged ordinances was unconstitutional, and, thus, the legal relationship between the parties was changed so that the District Court had erred in failing to award attorney fees. Similarly, in considering a decision of another Circuit, the Sixth Circuit in *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001), held that a plaintiff was a prevailing party even though 12 of his 14 claims were dismissed. In an earlier Sixth Circuit case, the Court ruled that "[a]ny enforceable judgment, or comparable type of relief, or settlement, . . . will generally make a plaintiff a 'prevailing party.'" *Owner-Operator Indep. Driver's Assn., Inc. v. Vissell*, 210 F.3d 595, 597 (6th Cir. 2000).

The District Court, in its Order of July 15, 2016, [Doc. No. 49] declaring Arkansas' statutory scheme for ballot access for new political parties unconstitutional, stated in its Conclusions of Law on page 6, paragraphs 10, 11, and 12 that:

> The Secretary of State has not articulated any valid interest in requiring the Libertarian Party of Arkansas, ***or any new political party***, ***to nominate their candidates by a convention which must take place before the preferential primary***. Even though the Court finds the Libertarian Party of Arkansas' burden to be minor, ***there is no interest, regulatory or otherwise, to justify this restriction by the State***. Applying the balancing test of *Green Party of Ark. v. Martin*, ***the Court finds the Arkansas statutory scheme concerning ballot access for new party state candidates to be unconstitutional.*** [Emphasis added].

2

Therefore, the Court found that "the Arkansas statutory scheme for ballot access for new political parties is unconstitutional", not just for the Libertarian Party of Arkansas, and not just for the election cycle in 2016, but as a statutory scheme for ballot access for new political parties.  Nowhere in its Order of July 15, 2016, did the District Court say that its decision applied only to the Libertarian Party of Arkansas or only to the 2016 election cycle.  In further evaluating the Court's ruling, it is important to remember that the Plaintiffs in paragraph IV of their Complaint [Doc. No. 1] sought ". . . a judgment declaring Ark. Code Ann. §§ 7-7-101, 7-7-203(c)(1), 7-7-205(c)(2), and 7-7-205(c)(3), as applied to the Plaintiffs for the 2016 Arkansas General Election *and, in its previous and subsequent version which was in effect before the 2016 election cycle and will be in effect after December 31, 2016, for all subsequent general elections in the State of Arkansas* and the facts and circumstances relating thereto, unconstitutional in that it violates in its application to the Plaintiffs herein for the 2016 Arkansas General Election, *and all subsequent Arkansas General Elections*, the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983."  [Emphasis added].

The foregoing request in Plaintiffs' Complaint for declaratory relief is exactly what the District Court did.  In its Order of July 15, 2016 [Doc. No. 49], the District Court found that the Arkansas statutory scheme for ballot access for new political parties is unconstitutional.  However, in judging it "as- applied" to the Plaintiffs' request for injunctive relief placing four newly nominated candidates on the Arkansas general election ballot, the Court found no evidence that their inability to timely file for office by the close of the filing deadline for the 2016 general election was due to the statutory scheme at issue and, therefore, denied Plaintiffs' request for injunctive relief placing the four newly nominated candidates on the Arkansas general election ballot in 2016.  An as-applied challenge argues that a law is unconstitutional as enforced against the plaintiffs before the court.  "[T]he distinction between facial and as-applied

3

challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). As the U.S. Supreme Court has noted:

> The "capable of repetition, yet evading review" doctrine, in the context of election cases, is appropriate when there are "as applied" challenges as well as in the more typical case involving only facial attacks. The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held. *Storer v. Brown*, 415 U.S. 724, 737, n.8 (1974).

The Court's ruling in the instant case, when considered in the light of the U.S. Supreme Court's teaching in *Storer* above, is not only helpful to the Libertarian Party of Arkansas (which has been a new party three times in recent election cycles in Arkansas—see Dr. Pakko's testimony on p. 12, lines 1-4 of Tr. of hr. on motions, Feb. 19, 2016), but is helpful to any new party in Arkansas.

While Plaintiffs' request for injunctive relief was denied as to putting certain candidates on the general election ballot in 2016, this was done because the Court treated established political parties, new political parties, and their candidates—whether nominated by preferential primary or nominating convention—equally by having the candidates' political practices pledges due at the same time for all candidates during the party filing period, along with having the new political party's nominating convention to be at the same time as the preferential primary election, rather than requiring the nominating convention of a new political party in Arkansas to be conducted several months earlier than the preferential primary election for the established political parties.

Thus, while Plaintiffs did not get their injunctive relief as to having their additional state office candidates who were nominated at their second convention on February 27, 2016, placed on the ballot for the 2016 general election for the reasons explained by the Court in its Conclusions of Law, paragraphs 13, 14, and 15 on pages 6 and 7 of its Order of July 15, 2016, Plaintiffs were successful in receiving a declaratory judgment which held Arkansas's statutory scheme for ballot access for new political parties unconstitutional.  Said statutory scheme for ballot access for new political parties will still be unconstitutional in future election cycles because after December 31, 2016, Ark. Code Ann. § 7-7-203(a) will return the general primary runoff election from the fourth Tuesday of March to the second Tuesday of June in 2018 and subsequent election years thereafter, with the preferential primary election remaining three weeks before the general primary runoff election, thus putting it in late May of an election year, and, under Ark. Code Ann. § 7-7-203(c)(1), the seven day political practices pledge and party filing period will be moved to start from the first Monday in November in the year before the general election to a one-week period ending at 12:00 noon on March 1 and beginning at 12:00 noon one week prior to the first day in March of the election year.  Therefore, the Arkansas statutory scheme for ballot access for new political parties will still require the nominating convention to be conducted several months before the preferential primary election, and will continue to be unconstitutional.  Such a finding of unconstitutionality is neither "technical" nor "insignificant," and changes the legal relationship between the parties.

<u>Defendant's argument that the District Court's declaring the Arkansas statutory scheme for ballot access for new political parties unconstitutional actually prevents unsuccessful nominees from running for another office does not make sense and is not a recognized State Interest.</u>

Defendant argues in his objections and response that the Court "by Declaring Act 1356 unconstitutional, actually prevents these unsuccessful nominees from running for another office." The Defendant appears to be referring to certain selected testimony from the transcript of the

5

motion hearing on February 19, 2016, wherein Dr. Pakko talked about sometimes candidates who failed at one office at a nominating convention, were able to run for another office successfully at the nominating convention. While the foregoing is simply a demonstration as to how the Libertarians have tried to make the best of an unconstitutional law, it hardly constitutes a compelling state interest. The fact is that if the nominating convention for newly recognized political parties in Arkansas—as per the District Court's order of July 15, 2016—can be conducted on the same date as the preferential primary election, unsuccessful candidates for one new political party office could still have the opportunity to seek another new political party office at the nominating convention if they filed their political practices pledge during the political party filing period for both offices. Of course, if this is not allowed, then there is no harm in equal treatment for both new political parties and established political parties.

     Defendant's argument makes no sense at all as to recognized State interests because under the current unconstitutional law of having the nominating convention for new political parties many months before the preferential primary election, an unsuccessful candidate at a new political party convention could file during the political party filing period for the office he was denied at the new political party's nominating convention as a candidate—i.e., sore loser, in one of the established party's primaries. Further, as established at trial of the case at bar, Libertarian voters at the new party's nominating convention can under current law—after casting votes at the nominating convention—also vote in one of the established party's preferential primary elections several months later. In this regard, it should be considered that the U.S. Supreme Court has spoken of the State's interest in confining each voter to one vote in one primary election, ". . . and that to maintain the integrity of the nominating process, the State is warranted in limiting the voter to participating in but one of the two alternative procedures . . . ." *Storer v. Brown*, 415 U.S. at 741. Thus, the current unconstitutional Arkansas statutory scheme for ballot access for

new political parties actually allows new party members who are unsuccessful in obtaining the new party's nomination for an office at the nominating convention to defy the State's interest in preventing sore losers, as well as to defy the State's interest in preventing double voting in the nominating process. Defendant's argument on this point is simply disjointed, confused, and illogical.

<u>The decision of the Trial Court denied the as-applied injunctive relief requested of placing four new candidates on the Arkansas ballot in 2016, but granted the declaratory relief requested of declaring the ballot access scheme for new political parties in Arkansas unconstitutional.</u>

Defendant continues to confuse an as-applied challenge and a facial challenge as same relates to the District Court's Order of July 15, 2016, declaring the Arkansas ballot access scheme for new political parties unconstitutional. Not only did Plaintiffs challenge the election laws in question in 2016 (to which they have been subjected three times per Dr. Pakko's testimony), but, as stated in paragraph IV of Plaintiffs' complaint, Plaintiffs challenged the Arkansas ballot access scheme for new political parties for future elections. As stated above, not only can a claim have characteristics of as-applied and facial challenges, but "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United*, 558 U.S. at 331.

<u>The District Court has discretion in awarding attorney fees in considering such factors as degree of success and whether there has been duplication of work effort.</u>

As demonstrated hereinabove, the declaratory relief requested by Plaintiffs in their lawsuit was 100% successful in having Arkansas's ballot access scheme for new political parties declared unconstitutional so that in the future new political parties which nominate by convention (a position the Libertarian Party of Arkansas has found itself in three times) will have the right to conduct their nominating convention at the same time the major political parties conduct their preferential primary election. Further, all candidates for partisan office in

7

Arkansas of either new political parties who nominate by convention or the major and established political parties who nominate at the preferential primary election will be treated equally per the District Court's order of July 15, 2016, because all candidates will have to file their political practices pledges at the same time during the political party filing time period. Of course, it is not necessary for the Court to rewrite the election laws in question since the Arkansas legislature should be allowed the opportunity to address the Court's order declaring Arkansas's statutory scheme for ballot access for new political parties unconstitutional.

As to duplicative work and reduction of hours, because of the fact that the Plaintiffs did not receive their injunctive relief requested for the 2016 election of having the new candidates of the Libertarian Party of Arkansas nominated on February 27, 2016, placed on the Arkansas general election ballot, Plaintiffs would note that Mr. Hyman deducted 23 hours of work from his 70.9 hours for a net total of 47.9 hours, and Mr. Linger deducted 27.4 hours of work from his total of 121.6 hours for a net total of 78.5 hours at $300.00 an hour and 15.7 hours at $250.00 per hour. Further, it should be noted that both Mr. Hyman and Mr. Linger asked for half their time for their hearing on the Motion for Preliminary Injunction and other motions that was held on February 19, 2016, because they did not receive the preliminary injunctive relief they requested. Also, Mr. Linger eliminated his travel time totally for his attendance at said motions hearing, and only Mr. Hyman attended the second deposition of Dr. Pakko in Little Rock on June 2, 2016. These adjustments and deductions, along with other deductions, coming to a total reduction of 50.4 hours, are a significant reduction that was done by the attorneys themselves. The District Court, of course, has discretion in making further adjustments if it feels same are necessary.

WHEREFORE, premises considered, Plaintiffs request the Court to grant their Motion for Attorney Fees.

Respectfully submitted this 22nd day of August, 2016.

        Libertarian Party of Arkansas,
        Kristin Vaughn, Robert Chris Hayes,
        Debrah Standiford, and Michael Pakko

        /s/ James C. Linger
        James C. Linger, OBA No. 5441
        1710 South Boston Avenue
        Tulsa, OK 74119-4810
        (918) 585-2797 Telephone
        (918) 583-8283 Facsimile
        bostonbarristers@tulsacoxmail.com

        W. Whitfield Hyman, AB No. 2013-237
        King Law Group
        300 North 6th Street
        Fort Smith, Arkansas 72901
        Telephone (479) 782-1125
        Facsimile (479) 316-2252
        william.hyman@gmail.com
        *Counsel for Plaintiffs*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 22nd day of August, 2016.

        /s/ James C. Linger
        James C. Linger